**TOWER CONTRACTING COMPANY,
Appellant,**

v.

**CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION
FUND, et al., Appellees.**

No. 19805.

Court of Civil Appeals of Texas,
Dallas.

April 18, 1979.

Rehearing Denied May 16, 1979.

G. Leroy Street, Kenneth G. Lupo, Geary, Stahl, Rodhe & Spencer, Dallas, for appellant.

Robert C. Cox, Erhard, Cox & Ruebel, D. L. Case, Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellees.

Before GUITTARD, C. J., and ROBERT-SON and CARVER, JJ.

GUITTARD, Chief Justice.

In this suit for damages for wrongful foreclosure and for tortious interference with negotiations to avoid the foreclosure, the court rendered judgment for defendants on the jury's verdict. Plaintiff appeals, contending that the trustee's sale was wrongful as a matter of law because the notice of sale was posted in violation of a temporary restraining order. We hold that plaintiff is not entitled to recover damages on this ground because it obtained the temporary restraining order on obviously insufficient grounds and then agreed that the trustee was free to proceed with the foreclosure. We hold also that the evidence supports the jury's negative findings on the other grounds alleged and that the admission of certain evidence was not error. Accordingly, we affirm.

The material facts are undisputed. Plaintiff Tower Contracting Company was the owner of a hotel-office-building complex, subject to a deed of trust securing a promissory note held by the trustees of the Teamsters Pension Fund, whom we shall call the Teamsters. On May 7, 1975, the trustee under the deed of trust notified plaintiff that by reason of plaintiff's failure to pay monthly installments of principal and interest and failure to pay property taxes, the Teamsters had matured the balance of the note and were causing the property to be posted for a trustee's sale on June 3.

Plaintiff then sought a temporary restraining order, which was issued on June 2. The sworn petition alleged that plaintiff had requested a moratorium on the principal payments of the loan, that plaintiff had obtained a tentative oral agreement from another lender to advance the funds necessary to pay the taxes before June 3, and that the Teamsters had orally agreed that the trustee's sale would not be held if the property taxes were paid. The petition also alleged that the prospective lender advised plaintiff on May 30 that the funds would

not be advanced, that plaintiff immediately notified the Teamsters' attorney, who advised that no more time would be granted and that the sale would be held on June 3. The petition alleged that there was insufficient time to file a petition and obtain a hearing and prayed for issuance without notice of an order immediately restraining the trustee from proceeding with the sale.

On presentation of this petition, a district judge signed an ex parte fiat directing the clerk to issue an order restraining the trustee from proceeding further under the deed of trust. The trustee was forbidden to post for sale or to conduct any sale of the land in question prior to a hearing on the application for temporary injunction, which was set for June 12. The trustee obeyed this order with respect to the sale on June 3, but, on June 9, proceeded to post another notice for a sale on July 1. The Teamsters intervened in the proceedings, and on June 12 the parties made and signed a written agreement to dissolve plaintiff's temporary restraining order. The agreement further provided that plaintiff would not pursue its application for a temporary injunction and that the Teamsters would withdraw an action they had filed for damages for wrongful issuance of the restraining order. Finally, the agreement provided that if a new agreement should not be reached between the parties before July 1, then the trustee "shall be free to proceed with foreclosure of the property in question without intervention or interference" by plaintiff. This agreement was embodied in a formal order signed by all the parties and by the judge on June 16. The trustee then proceeded to sell the property on July 1 in accordance with the notice posted on June 9.

Plaintiff argues that notwithstanding its agreement on June 12, the trustee's sale was wrongful because the notice of June 9 was void, since it was posted in violation of the temporary restraining order. Plaintiff insists that although the trustee was "free to proceed with foreclosure" if no further agreement should be made by July 1, the agreement of June 12 did not provide that the sale could be made without a valid

notice to prospective bidders, and that the existence of the temporary restraining order tended to chill the bids and prevent the property from selling at an adequate price. Consequently, plaintiff contends that it is entitled to judgment for damages equal to the difference between the value of the property, as found by the jury, and the balance of the debt at the time of the sale.

■ We cannot agree that plaintiff is entitled to damages on the theory that no valid notice was posted. The only defect in the notice resulted from the temporary restraining order that plaintiff itself had obtained on obviously insufficient grounds. The petition alleged only that the Teamsters had agreed not to foreclose if plaintiff should pay the taxes by June 3, and that plaintiff expected to borrow the money to pay the taxes, but was notified by the prospective lender on May 30 that the money would not be advanced. Plaintiff makes no pretense in this suit that it had even an arguable ground for a temporary restraining order or a temporary injunction. In its present petition plaintiff alleges simply that it obtained the temporary restraining order "[b]ecause plaintiff's source for raising the necessary funds was unexpectedly withdrawn." Plaintiff's president testified by deposition in the present action that the only reason for obtaining the temporary restraining order was to gain time in the hope that the necessary funds could be raised.

In support of its contention that the sale is void, plaintiff relies on *Jackson v. The Praetorians,* 83 S.W.2d 740, 741 (Tex.Civ. App.—Dallas 1935, no writ). In that case this court decided that a trustee's sale held one day after dissolution of a temporary injunction restraining the sale was void on two grounds, first, abandonment of the remedy of non-judicial foreclosure by filing of a counterclaim for judicial foreclosure, and, second, posting of notices in violation of the injunction. There is no suggestion in the opinion that the injunction was originally improper, the ground for dissolution being that the mortgagee had abandoned its remedy of extra-judicial foreclosure. Ac-

cordingly, the court set aside the trustee's sale and permitted the judicial foreclosure action to proceed.

We do not read that opinion as supporting a recovery in a case like the present. We need not determine what result would follow if the property were still in the hands of the Teamsters so that another foreclosure sale could still be held. The present suit is an action to recover damages as a result of the issuance of a temporary restraining order which plaintiff obtained on a petition stating insufficient grounds and which plaintiff voluntarily withdrew after agreeing not to interfere further with the sale.

Plaintiff insists that it complied with its agreement not to interfere with the sale, but that the agreement did not authorize a sale without proper posting of notice. We do not think plaintiff should be heard to claim damages on this ground for two reasons.

■ First, since plaintiff knew that the temporary restraining order was in force until June 12, but, on that day, withdrew its application for injunction and agreed not to interfere with the sale if no further agreement were made before July 1, that agreement, though not entirely clear on this point, may reasonably be construed as a waiver of any right to contest the validity of a sale on that date on the ground of improper posting. Obviously, the Teamsters and the trustee did so understand it. Apparently, plaintiff had the same understanding of the agreement at the time, since it made no objection to the sale, which it knew would take place on July 1. After standing silent until after the sale was made, plaintiff should not now be heard to put a different construction on the agreement and claim that it did not authorize the sale to proceed in accordance with the notice posted on June 9.

■ Second, plaintiff had the burden in this suit to show, at the very least, that it acted in good faith when it applied for the temporary restraining order and not, as it now admits, deliberately to delay a sale

that otherwise would have been entirely proper. If prospective purchasers were discouraged from bidding at the sale by issuance of the temporary restraining order, that discouragement was a result of plaintiff's own abuse of the judicial process in obtaining the temporary restraining order without legal or equitable grounds. Plaintiff should not be able thus to rely on its own wrong to create a cause of action in its favor.

Moreover, the record indicates that plaintiff obtained the temporary restraining order in violation of rule 1.3(b) of the Dallas Civil Court Rules, which provides:

> Counsel presenting any application for an ex parte order shall at the time the application is presented certify to the court that:
>
> (1) to the best of his knowledge the party against whom the relief is sought is not represented by counsel in the matter made the basis of the suit in which the relief is sought; or
>
> (2) if such party is so represented by counsel, that (i) such counsel has been notified of the application and does not wish to be heard by the court thereon; or (ii) that counsel presenting the application has diligently attempted to notify such counsel and has been unable to do so and the circumstances do not permit additional efforts to give notice.

The petition in the injunction suit affirmatively shows that before that suit was filed, plaintiff had been negotiating with Albert Levy, the trustee. The record also shows that Mr. Levy was an attorney practicing in Dallas County and that he was representing the Teamsters. Yet the petition contains no certificate stating that plaintiff had notified Mr. Levy of its intention to apply for temporary restraining order or had attempted to notify him. Neither does the judge's ex parte order recite that any attempt had been made to give Mr. Levy notice of the application before the temporary restraining order was issued. Although such a notice is not required by rule 680 of the Texas Rules of Civil Procedure, we consider the local rule highly salutary.

It is designed to obviate just such problems as those now presented to us. Although the judge was not required to hear evidence before acting on the application, opposing counsel, if present, could easily have pointed out that the petition failed to state sufficient grounds for injunctive relief.

■ Consequently, we strongly recommend that all judges operating under the Dallas Civil Court Rules insist on strict compliance with rule 1.3(b) before signing any ex parte order granting temporary injunctive relief. Other trial judges would do well to adopt a similar practice, with or without formal adoption of a local rule.

For these reasons we decline to hold that plaintiff is entitled as a matter of law to recover damages based on invalidity of the sale. We do not hold, however, that a notice posted in violation of a restraining order issued on insufficient grounds or without prior notice to opposing counsel is not punishable as a contempt of court. Neither do we hold that plaintiff would not have been entitled to raise the question of invalidity of the notice if it had done so promptly.

■ In addition to the claim of invalidity of the notice, plaintiff attacks the jury's findings as contrary to the facts conclusively established by the evidence, and, alternatively, as against the great weight and preponderance of the evidence. In particular, plaintiff attacks the jury's refusal to find that the Teamsters made promises or assurances which led plaintiff reasonably to believe that they would not complete the foreclosure without giving plaintiff a reasonable opportunity to obtain commitments for negotiating an acceptable satisfaction of its indebtedness to the Teamsters. Plaintiff also attacks certain findings relating to its claim against Ronald F. Walters, who bought the property from the Teamsters after the trustee's sale. Plaintiff joined Walters as a defendant, alleging that he maliciously induced the Teamsters not to grant plaintiff a moratorium on its loan payments. All issues concerning Walters were found in his favor, and plaintiff now attacks these findings as contrary to the

evidence. After reviewing the record, we find that the evidence is sufficient, both legally and factually, to support all these findings. Consequently, these points are overruled.

 We also overrule plaintiff's points complaining of the admission in evidence of certain legal proceedings tending to show the poor financial condition of plaintiff's president and sole stockholder. We conclude that this evidence was admissible to rebut plaintiff's allegations that plaintiff would have been able to raise funds for the payment of its indebtedness to the Teamsters and would have saved its equity in the property if given a reasonable opportunity, especially in view of evidence that plaintiff had represented to the Teamsters that its president would be able to raise money by selling certain property that he owned individually. There was evidence tending to show that plaintiff's inability to raise the money was due, in part, to a large loan it had made to its president. The evidence complained of tended to show the president's inability to repay the loan and raise other funds to enable plaintiff to pay its indebtedness, even if additional time had been granted. Consequently, we find no error in the admission of this evidence.

Affirmed.